MARGARET A. GRINER, Plaintiff-Appellee, *v.* HENRY A. GRINER, Defendant-Appellant.

(No. 75-9; ▪▪▪▪▪▪▪

Second District (2nd Division)—January 7, 1976.

Cook & Hellyer, of Loves Park, for appellant.

Fearer & Nye, of Oregon, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

The plaintiff Margaret A. Griner filed suit for separate maintenance and the defendant Henry A. Griner counterclaimed for Divorce. After trial the circuit court gave judgment for separate maintenance to the plaintiff wife and denied the husband's counterclaim for divorce. The husband appeals contending that the court erred in excluding evidence of a settlement agreement between the parties and that the judgment denying the divorce was against the manifest weight of the evidence.

The parties were married in 1959 and lived together until April 1974. The marriage began to deteriorate in October 1973 which resulted in a separation and suit for separate maintenance filed by plaintiff on April 22, 1974. On May 12, 1974 the wife and the son of the parties went to the husband's separate residence. An altercation occurred during which she stabbed the husband with a steak knife. He was hospitalized in intensive care for 12 days.

The wife testified that the stabbing was due to her fear for the safety of the 13-year-old son of the parties who was being physically abused by the husband. The wife acknowledged that she had also cut the defendant with a knife in 1960 but was provoked.

The defendant testified that while in hospital being fed intravenously he was scratched by plaintiff. She denied this.

■■ The husband signed a criminal complaint and the wife was arrested on a felony charge of aggravated battery arising from the May 12 stabbing. A property settlement agreement was made between the parties which, as part of the consideration, included a dismissal by the husband of the charges he had filed against the wife. This agreement was properly excluded by the trial court. Where any part of the consideration for a contractual obligation executed to compromise civil injuries resulting from a criminal act is a promise that the prosecution for the criminal act shall be suppressed, the contract is unenforceable. (*Williamsen v. Jernberg*, 99 Ill.App.2d 371, 375.) The agreement not to prosecute is void, not only because it is against the policy of the law, but because the agreement itself is a crime. Ill. Rev. Stat. 1973, ch. 38, par. 32-1; also see 12 Ill.L.&Pr. *Contracts* § 179 (1955).

Starting in October 1973 the husband started not coming home nights. By January 1974 he was away more nights than at home and never gave any reasons for staying away. On April 21, 1974, he moved out completely. On one occasion when the husband was gone about 30 hours with no word from him, about midnight the wife called Rockford information for a telephone number in the name of the husband. She got the number. She called. A woman answered. Shortly later the husband called the wife and asked her what in hell she was trying to prove. The next day the husband came home and said that he had an apartment in Rockford and that he had had it since October 1973. He further admitted that he was living with the other woman and told the wife that he didn't want to stay married to her and would have nothing to do with her. On May 12 he called and said he would come back home for dinner. He didn't show so the wife and son went to Rockford to the apartment. The son remained outside until he heard an argument when he went into the apartment. His father told him to leave and he said he wanted Mom to come too because he didn't want them to argue and that he wasn't going to leave until Mom told him to. The defendant then grabbed the boy, started hollering at him and forced him to walk backwards into the living room. The defendant was screaming, yelling, ranting and raving. He was scaring the boy whose "eyes were as large as saucers." At this point the wife grabbed a knife from a nearby table and stabbed the defendant.

At the close of the husband's case it was pointed out by motion that

he had failed to prove that he had conducted himself as a "good, affectionate and kind husband" as alleged in his complaint and denied by the answer.

■■ Recrimination was not pleaded as an affirmative defense but the issue of conduct of the husband was raised by the pleadings.[1] The testimony shows the husband's conduct to be far from that of the ordinary "good, affectionate and kind husband." We believe that on the facts of this case the trial judge was correct in denying a divorce to the husband on his counterclaim. See *Jackson v. Jackson*, 294 Ill.App. 552, 557.

Affirmed.

RECHENMACHER, P. J., and T. MORAN, J., concur.

---

[1] "In every action for a divorce commenced on or after the effective date of this amendatory Act of 1967, the fault or conduct of the plaintiff, unless raised by the pleadings, is not a bar to the action nor a proper basis for the refusal of a decree of divorce." Ill. Rev. Stat. 1973, ch. 40, par. 9a.

Query: Is it reasonable to conclude that the statute has negated the need for description of prior conduct of the plaintiff? Weinberg, Illinois Divorce, Separate Maintenance and Annulment § 122 (2d ed. 1969).