2026 IL App (1st) 240596-U

FIRST DISTRICT
SECOND DIVISION
March 24, 2026

No. 1-24-0596

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| | ) | |
| THERESA ALEMAN-MISTAR, | ) | |
| | ) | Appeal from the Circuit Court |
| Petitioner-Appellee, | ) | of Cook County, Illinois |
| | ) | |
| vs. | ) | No. 2020 D 8130 |
| | ) | |
| ELHASSAN MISTAR, | ) | Honorable H. Yvonne Coleman |
| | ) | Judge Presiding |
| Respondent-Appellant. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Van Tine and Justice McBride concurred in the judgment.

**ORDER**

¶ 1     *Held*: Affirmed. Husband did not establish on appeal that court erred in valuation of husband's income or of marital assets.

¶ 2     This appeal concerns a judgment of dissolution of marriage between petitioner Theresa Aleman Mistar and her husband, respondent Elhassan Mistar. Elhassan appeals, citing two errors in the circuit court's judgment: its valuation of his income and its valuation of marital assets.

¶ 3     These valuations were made after a trial for which we lack a transcript, a stipulation, or a bystander's report. And Elhassan's brief does not remotely touch on the underlying facts of this case or the evidence presented. Principally for these reasons, we cannot say the circuit court abused its discretion in its valuations and thus affirm.

¶ 4    We begin with the deficiencies hampering our review. For one, Elhassan's statement of facts is all of three sentences. He tells us only that (1) Theresa filed for dissolution of marriage; (2) the court entered a judgment of dissolution; and (3) Elhassan filed a notice of appeal.

¶ 5    Illinois Supreme Court Rule 341(h) (eff. July 1, 2008) governs the contents of an appellant's brief. The rules are "not mere suggestions." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7. Rule 341(h)(6) requires a statement of facts that contains the facts "necessary to an understanding of the case." Ill. S. Ct. R. 341(h)(6) (eff. July 1, 2008). We may strike a statement of facts that fails to substantially comply with this rule. *Hall*, 2012 IL App (2d) 111151, ¶ 9. We will choose not to strike Elhassan's brief and proceed as best we can.

¶ 6    The statement of facts aside, Elhassan's argument section cites only one document, the court's written judgment—not one citation to documentary evidence supporting his position. The appellant must provide those record citations; " 'it is not our duty to search the record for material upon which to base a reversal.' " *Vance v. Joyner*, 2019 IL App (4th) 190136, ¶ 80 (quoting *Farwell Construction Co. v. Ticktin*, 84 Ill. App. 3d 791, 802 (1980)).

¶ 7    Finally, we have no transcript of the proceedings or any substitute by way of stipulation or bystander's report. The burden is on the appellant to provide a complete record on appeal. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Any doubt arising from the incompleteness will be resolved against the appellant. *Id.* at 392. Said differently, "[w]hen the record on appeal is incomplete, a reviewing court may indulge in every reasonable presumption favorable to the judgment from which the appeal is taken, including that the trial court ruled or acted correctly." *Fraser v. Jackson*, 2014 IL App (2d) 130283, ¶ 22 (internal quotation marks omitted).

¶ 8    That absence of a transcript is particularly troublesome here, as Elhassan correctly notes that the court's valuation of assets in a marital-dissolution action is reviewed for an abuse of

discretion. *In re Marriage of Schneider*, 214 Ill. 2d 152, 162 (2005). It is nearly impossible for us to determine whether the court abused its discretion when we cannot read a transcript of the testimony. *Foutch*, 99 Ill. 2d at 392.

¶ 9    Indeed, in the absence of a transcript of an evidentiary hearing, "*Foutch* dictates that we would simply presume the trial court's order was in conformity with the law and had a sufficient factual basis." *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 38; see *Illinois Founders Insurance Co. v. Williams*, 2015 IL App (1st) 122481, ¶ 56 (absence of report of proceedings or acceptable substitute frustrated appellate review for abuse of discretion); *In re Marriage of Salvetiu*, 2023 IL App (1st) 211162-U, ¶ 33 (appellate court could not find abuse of discretion in court's maintenance award without transcript of evidentiary hearing).

¶ 10    The one-two combo of providing no substantive factual background and the lack of a transcript makes our review exceptionally difficult. If we are directed to no evidence undermining the trial court's written findings, we are hard-pressed to find error in those findings.

¶ 11    With that steep hill to climb, Elhassan first argues that the court erred in its calculation of his income for the purpose of determining his maintenance obligation to Theresa. He says the court erred in imputing a gross annual income of $100,000 to him, because the court may impute income only if income is uncertain—and in this case, he says, "the income is certain."

¶ 12    A court may impute income to a spouse if the spouse (1) becomes voluntarily unemployed; (2) tries to evade a support obligation; or (3) unreasonably fails to take advantage of a business opportunity. *In re Marriage of Van Hoveln*, 2018 IL App (4th) 180112, ¶ 40; *In re Marriage of Blume*, 2016 IL App (3d) 140276, ¶ 30. The decision itself to impute income is reviewed for an abuse of discretion. *In re Marriage of Britton*, 2022 IL App (5th) 210065, ¶ 57.

¶ 13    Though Elhassan characterizes the evidence of his income as "certain," the circuit court

clearly did not. In two different ways, the court found that Elhassan was trying to evade his support obligations. For one, he had stopped paying his temporary maintenance obligation without court authorization and had been found in contempt.

¶ 14    For another, the court did not find Elhassan credible in fully disclosing the income of his business. The court noted that "Elhassan does not maintain records of his business revenue other than his bank deposits. He did not provide evidence of contracts, agreements, business receipts, or any other proof of his business transactions." The court found that "a significant amount of his business income is derived from cash transactions and payments," and "Elhassan did not present credible or sufficient evidence to prove that he included all of his cash receipts in the bank records during the past five years." The court also raised questions "regarding the reasonableness of some of his business expenses and liabilities."

¶ 15    The court clearly took issue with the evidence Elhassan presented and believed he was significantly understating his income to avoid his maintenance obligation. We have no basis to find an abuse of discretion in that finding. See *In re D.O.*, 2025 IL App (3d) 240645-U, ¶ 14 (in imputing net income, trial court correctly considered respondent's "credibility and forthrightness in disclosing his income."); *In re Marriage of Sweet*, 316 Ill. App. 3d 101, 109 (2000) (same).

¶ 16    Elhassan points to the court's written order, where the court noted that Elhassan claimed that he is "unable to earn more than $50,000—a high of $55,000—per year from his business," a sign fabrication company. The court found that, based on the business bank deposits for the past 5 years, "the business revenue averages approximately $185,000 per year." The court ultimately imputed a gross annual personal income to Elhassan in the amount of $100,000.

¶ 17    Elhassan criticizes the imputed figure of $100,000. He says that, "[u]tilizing customary measures on small businesses, one derives that net profitability to be thirty-five percent (35%) of

the gross revenue. Thus, in [*sic*] based on a worst case scenario, [Elhassan's] income should be sixty-four thousand seven hundred fifty dollars ($64,750.00)," not $100,000. (He gets his number by taking 35% of the company's business revenue of $185,000.)

¶ 18     We reject this argument for two reasons. First, while it is true that the court found that, *based on the bank deposits*, the company's annual gross revenue was $185,000, as we just noted above, the court was skeptical that the bank deposits told the whole story. The court specifically found that "Elhassan did not present credible or sufficient evidence to prove that he included all of his cash receipts in the bank records." The court was not saying that the $185,000 figure was a hard-and-fast reliable number; the court was saying that, if based solely on the information that Elhassan produced—though the court was skeptical—that number was $185,000.

¶ 19     Second and independently, it is not clear what Elhassan means by "utilizing customary measures on small business." If any testimony was given to that effect, we cannot read it in a transcript. If he presented any other evidence to that effect, he does not cite it—nor did the trial court mention it in its written order. He cites no authority, via lay testimony or expert opinion, or any other source whatsoever, for his assertion that it is "customary" that "net profitability" of a company is 35% of gross revenue. We have no basis to credit that assertion.

¶ 20     We have been provided no reason to upset the trial court's calculation of imputed income as $100,000. We thus uphold it.

¶ 21     The title of Elhassan's second point of error is that "the court failed to state the valuation of the marital assets." That is a curious way to frame an argument. To be sure, the court is required to equitably and justly distribute the marital assets among the ex-spouses. *In re Marriage of Thomas*, 239 Ill. App. 3d 992, 996 (1993). We are not aware of a specific rule or doctrine, nor has Elhassan cited one, that requires the court to explicitly state the value of each

individual asset on the record.

¶ 22    In any event, even if we read this argument more as a general challenge to the distribution of the two principal assets—the proceeds of the home sale and Elhassan's business—we would find no abuse of discretion. The court valued Elhassan's business at $80,000 and allocated the business to him; the court gave the proceeds from the home sale to Theresa. The court, recognizing that an "equitable" and "just" distribution does not mean an *equal* distribution (see *id*.)—which Elhassan acknowledges on appeal—awarded the full sales proceeds to Theresa "because of Elhassan's continued failure to pay maintenance support as previously ordered by the court and because of Theresa's economic insecurity."

¶ 23    Presumably, then, the home sales proceeds were greater than $80,000. But the court explained why it gave a greater split to Theresa than Elhassan, and we have no basis to find that split to be an abuse of discretion.

¶ 24    Elhassan's argument is reduced to a complaint that "the actual divide is now unknown," because the court "did not properly cite the valuation of the marital property" and "does not know what the total value of the entire marital asset is." That argument borders on frivolous. The actual divide is far from "unknown"—Elhassan knows the amount of home sales proceeds just as Theresa does, and just as the trial court did. The mere fact that the court did not include that number in its written order matters not at all. Indeed, the only reason that *we* do not know the number is that Elhassan, as the appellant, failed to provide us with a complete record. We could hardly allow him to profit from his own failure.

¶ 25    We have been provided no reason to find error in the circuit court's ruling. We thus affirm it in all respects.

¶ 26    Affirmed.