2026 IL App (1st) 250293-U

Nos. 1-25-0293 and 1-25-0444 (consolidated)

Order filed April 21, 2026

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| DORUK ILGAZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 OP 75444 |
| | ) | |
| ORSOLYA SZERI KAZOUINI, | ) | Honorable |
| | ) | Jonathan Clark Green, |
| Respondent-Appellee. | ) | Judge, presiding. |

| | | |
|---|---|---|
| ORSOLYA SZERI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 OP 76695 |
| | ) | |
| DORUK ILGAZ, | ) | Honorable |
| | ) | Jonathan Clark Green, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Affirmed. Appellant provided insufficient record on appeal to review his challenges to denial of his request for civil plenary order of protection and issuance of a civil plenary order of protection against him.

¶ 2    In these appeals, which we consolidated in January 2026, *pro se* appellant Doruk Ilgaz (Ilgaz) challenges the trial court's denial of his petition for a civil plenary order of protection against appellee Orsolya Szeri Kazouini (Szeri) (appeal number 1-25-0293) and the court's grant of Szeri's petition for a civil plenary order of protection against Ilgaz (number 1-25-0444).

¶ 3    Ilgaz claims the trial court erred in denying his petition for a plenary order of protection (case number 24 OP 75444) because the court failed to consider his "corroborating evidence" detailing physical abuse, relentless stalking, and severe emotional harassment by Szeri. He further argues the court erred in issuing a plenary order of protection against him in favor of Szeri (case number 24 OP 76695) because the court accepted Szeri's "unsubstantiated, contradictory, and demonstrably false verbal allegations."

¶ 4    Ilgaz also argues the trial court improperly admitted police reports against him, and that its rulings lacked any substantive legal findings and were demonstrably based on improper assumptions, a clear disregard for due process, and pervasive sex-based bias.

¶ 5    Because Ilgaz failed to provide an adequate record on appeal for this court's review of the issues presented, we affirm the judgments of the trial court.

¶ 6                                    BACKGROUND

¶ 7    In each appeal, the record on appeal comprises a single volume of common law record; there is no report of proceedings or acceptable substitute such as an agreed statement of facts or a bystander's report. See Ill. S. Ct. R. 323(c), (d) (eff. July 1, 2017). We separately describe the

background underlying each action, though the trial court resolved both Ilgaz's and Szeri's petitions during the same January 15, 2025, hearing.

¶ 8                                    A. Appeal No .1-25-0293

¶ 9             (Ilgaz's Petition for an Order of Protection: Case No. 24 OP 75444)

¶ 10    On June 13, 2024, Ilgaz filed a petition for a civil emergency and plenary order of protection against Szeri. On the standardized form, Ilgaz checked the boxes identifying a "dating relationship (including ex)" with Szeri and that they were sharing or shared a home. Ilgaz alleged that, after they had "broken up," Szeri "showed up" at his home and physically attacked him. Ilgaz said he had photographs of the resulting wounds as evidence. He also alleged that Szeri attacked him while he was at her house trying to pack. He recorded the attack on his cellphone and uploaded the video evidence to YouTube "as private," thinking "it would stop her."

¶ 11    Ilgaz further alleged that Szeri "abruptly began talking about rape" and was "getting inform [*sic*] on ways to legally blame [him]." He therefore "told her to sign consent forms if she want[ed] to have sex with [him] ever again." She agreed, and he had photographs of her signing the consent forms as evidence. Ilgaz additionally alleged that Szeri continually harassed him over the phone. Szeri "began threatening" him and mentioned "her new boyfriend (one of them) has a gun." The petition requested that Szeri be ordered to stay away from Ilgaz at all times and cease all communication with him.

¶ 12    The trial court denied the petition for the emergency order of protection that same day and continued the petition for a plenary order of protection for hearing. On October 23, 2024, the trial court dismissed the action for want of prosecution, when Szeri was present in court and Ilgaz failed to appear.

¶ 13    Ilgaz filed a motion to reinstate the case, which the trial court granted.

¶ 14    At a hearing on January 15, 2025, the trial court denied Ilgaz's petition for a plenary order of protection and dismissed the action. The trial court stated on its disposition order that both Ilgaz and Szeri were present in court, the petition was denied for "reasons stated on record," and that Ilgaz failed to meet his burden of proof. The court noted it also entered an order of protection in "cross-pet 24 OP 76995."

¶ 15    On February 14, 2025, Ilgaz appealed, and this court assigned the matter appeal number 1-25-0293. On September 20, 2025, we entered an order taking the appeal on the record and Ilgaz's *pro se* brief only. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (reviewing court may take case on appellant's brief only).

¶ 16                              B. Appeal No. 1-25-0444

¶ 17              (Szeri's Petition for an Order of Protection: Case No. 24 OP 76695)

¶ 18    On July 19, 2024, Szeri filed a petition for a civil emergency and plenary order of protection against Ilgaz seeking to protect herself and her minor children. On the standardized form, Szeri checked the box identifying a "dating relationship (including ex)" with Ilgaz. In the petition, Szeri alleged that she and Ilgaz went to a nightclub where he "possibly drugged" her and "started talking to men around [her] asking to pay for a night with [her] 1000$ [*sic*]." After the nightclub closed, Ilgaz took her to his apartment and accepted $500 from another man and "made him rape" Szeri "a few times." She could not escape.

¶ 19    Szeri also alleged that Ilgaz stole her apartment key and entered the apartment on several occasions without her consent and refused to leave. Szeri further alleged that, after she "blocked

- 4 -

him everywhere," Ilgaz wrote "verbally abusive emails." Szeri requested that Ilgaz be ordered to cease all communication with Szeri and her friends and stay away from her at all times.

¶ 20    The trial court granted Szeri's petition for an emergency order of protection that same day and scheduled a hearing. On October 23, 2024, the trial court issued a two-year civil plenary order of protection by default against Ilgaz, barring Ilgaz from contact with Szeri and her two minor children by any means and granting her exclusive possession of her residence.

¶ 21    On November 13, 2024, Ilgaz filed a motion to reconsider, arguing that Szeri's petition was nothing more than retaliation for his filing his petition for an order of protection against Szeri. On November 22, 2024, the trial court vacated the default two-year plenary order of protection, reinstated and extended the emergency order of protection, and scheduled a hearing.

¶ 22    On January 15, 2025, the trial court issued "after hearing" a two-year civil plenary order of protection in favor of Szeri and her minor children, effective until January 15, 2027, ordering Ilgaz to have no contact by any means, including through social media or third parties, and awarding Szeri possession of her residence.

¶ 23    On February 14, 2025, Ilgaz filed a motion to vacate the plenary order of protection, because the order would make it illegal for Ilgaz to access his storage unit located across the street from Szeri's residence.

¶ 24    On February 26, 2025, the trial court entered a disposition order modifying the order of protection to allow Ilgaz access to his rented storage unit.

¶ 25    On that same day, Ilgaz filed a motion to "appeal" the plenary order of protection, arguing that Szeri had "presented false evidence" to the trial court and had lied under oath. Ilgaz was "looking to prove this" and asking for dismissal of the case.

¶ 26    On March 10, 2025, the trial court denied Ilgaz's "motion to reconsider" the two-year order of protection, without prejudice to the filing of a "proper 2-1401 petition showing due diligence and meritorious defense."

¶ 27    Ilgaz timely appealed, and this court assigned the matter appeal number 1-25-0444. On January 21, 2026, this court entered an order on its own motion taking the appeal on Ilgaz's *pro se* brief only and consolidating the appeal with appeal number 1-25-0293. We note that Ilgaz briefed the appeals separately but has filed a nearly identical appellant brief in each appeal.

¶ 28                                    II. ANALYSIS

¶ 29    Ilgaz argues that the trial court erred in denying his petition for a plenary order of protection, as the court ignored "multiple critical forms of corroborating evidence" that he submitted as proof of Szeri's physical abuse, relentless stalking, and severe emotional harassment. Ilgaz also argues that the trial court erred in issuing the two-year plenary order of protection against him based on Szeri's "uncorroborated verbal statements." He claims the court erroneously admitted and relied on police reports and violated his due process rights because the police reports were not disclosed to him. Ilgaz also argues that the trial court's failure to articulate specific findings and its "profound sex-based judicial bias" regarding its treatment of the evidence presented constitute reversible error.

¶ 30    As an initial matter, Ilgaz's *pro se* appellant briefs fail to meet the requirements of Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020), which provides mandatory procedural rules governing the content and format of appellate briefs. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12. For example, the statements of facts in Ilgaz's briefs improperly contain argumentative characterizations of the trial court's ruling and lack citations to the record on

appeal. See Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020) (statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal").

¶ 31    Ilgaz's briefs also fail to cite legal authority in support of his arguments. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (appellate brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"). We cannot afford more leniency to a *pro se* litigant, who must abide by the same rules as licensed attorneys. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78. The rules governing briefs are not mere suggestions. *Venturella v. Dreyfuss*, 2017 IL App (1st) 160565, ¶ 23.

¶ 32    We will not overturn the denial of a petition for an order of protection or the issuance of an order of protection absent an abuse of discretion. *Lutz v. Lutz*, 313 Ill. App. 3d 286, 298 (2000). But here, the record is insufficient to determine whether an abuse of discretion occurred.

¶ 33    Ilgaz, as appellant, bears the burden of providing this court with a sufficiently complete record for our review of the alleged errors. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). This duty applies to *pro se* litigants. *Rock Island County v. Boalbey*, 242 Ill. App. 3d 461, 462 (1993). Any doubts arising from the incompleteness of the record must be resolved against the appellant. *Foutch*, 99 Ill. 2d at 392. Here, as noted, Ilgaz has not provided us with a report of proceedings or acceptable substitute. See Ill. S. Ct. R. 323(c), (d) (eff. July 1, 2017).

¶ 34    The lack of a transcript is particularly troubling when we are reviewing the court's exercise of discretion, as here. See *Illinois Founders Insurance Co. v. Williams*, 2015 IL App (1st) 122481, ¶ 56 (lack of transcript frustrated appellate review for abuse of discretion); *In re Marriage of Aleman-Mistar v. Mistar*, 2026 IL App (1st) 240596-U, ¶¶ 8-9 ("It is nearly

impossible for us to determine whether the court abused its discretion when we cannot read a transcript of the testimony."); *In re Marriage of Salvetiu*, 2023 IL App (1st) 211162-U, ¶ 33 (appellate court could not find abuse of discretion without transcript of evidentiary hearing).

¶ 35    Absent a report of proceedings, we cannot ascertain what testimony, evidence, or argument was presented. Nor can we determine what evidence was excluded or the basis for the trial court's orders. Thus, in the absence of a transcript of an evidentiary hearing, "*Foutch* dictates that we would simply presume the trial court's order was in conformity with the law and had a sufficient factual basis." *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 38.

¶ 36    We note that Ilgaz attaches numerous exhibits to his briefs that are not included in the record on appeal, such as photographs and medical records. We cannot consider evidence that is not in the record on appeal. See *Waukegan Hospitality Group, LLC v. Stretch's Sports Bar & Grill Corp.*, 2024 IL 129277, ¶ 20 ("If pleadings, exhibits, or other materials are not in the record, they may not be placed before a reviewing court in an appendix."). We will disregard any exhibit not included in the record on appeal.

¶ 37    As a final matter, on November 10, 2025, Ilgaz filed a nearly identical motion for judicial notice of public records in each appeal, which we have taken with the case. In the motions, Ilgaz requests that we "[t]ake judicial notice of the Petition [for Supervisory Order] and docket in Illinois Supreme Court No. 131975," which he filed with our supreme court after filing his opening briefs in the instant appeals. Ilgaz states he does not request this court to "take the supervisory petition as proof of disputed facts," but rather that we note the same plenary order of protection issues are before our supreme court and he is "pursuing review through proper channels as they become permissible."

¶ 38    Ilgaz is correct that we "may take judicial notice of a written decision that is part of the record of another court because these decisions are readily verifiable facts that are capable of instant and unquestionable demonstration." *Aurora Loan Services, LLC v. Kmiecik*, 2013 IL App (1st) 121700, ¶ 37. To ensure there are no filings with our supreme court potentially affecting this court's review, we grant the motion and take judicial notice of Ilgaz's filings with our supreme court. We note that, in Supreme Court Appeal No. 131975, the supreme court denied Ilgaz's motion for a supervisory order on July 17, 2025, and denied his motion to reconsider on August 19, 2025. *Ilgaz v. Quish*, No. 131975 (Ill. August 19, 2025) (disposition order); *Ilgaz v. Quish* No. 131975 (Ill. July 17, 2025) (disposition order).

¶ 39                                III. CONCLUSION

¶ 40    For these reasons, we affirm the judgments of the circuit court of Cook County and grant Ilgaz's motions for judicial notice.

¶ 41    Affirmed; motion for judicial notice granted.